## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KUNLE ADE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 09-CV-1071 |
| | : | |
| KIDSPEACE CORPORATION, | : | |
| Defendant. | : | |
| | : | |

### DEFENDANT'S PRETRIAL MEMORANDUM

Defendant, KidsPeace Corporation, by and through its counsel, Tallman, Hudders & Sorrentino, submits the following Pretrial Memorandum consistent with this Court's Scheduling Order and the Local Rule of Civil Procedure 16.1(c).

**I.      Statement of the Nature of the Action and the Court's Jurisdiction**

On or about August 13, 2009, Plaintiff filed an Amended Complaint.  In his Amended Complaint, Plaintiff alleges claims of racial and national origin discrimination in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et. seq.* ("PHRA"), and the Civil Rights Act, 42 U.S.C. § 1981 ("Section 1981").  Plaintiff's Amended Complaint also alleges a claim for common law Wrongful Discharge and retaliation pursuant to Section 1981.  This Honorable Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**II.     Statement of Facts**

KidsPeace provides a unique children's psychiatric hospital, a comprehensive range of specialized and intensive and therapeutic residential treatment programs,

accredited educational services and a variety of community-based treatment programs and foster care and family services to give hope, help and healing to kids facing crisis. As part of its program, KidsPeace runs several children's homes located throughout the Lehigh Valley as well as nationally.

Plaintiff, who is of African decent, was hired on January 15, 2006, as a late-night child care counselor. This position provides security and support for residential clients during overnight hours. Plaintiff, worked as a late-night child care counselor at the Patriot Center. The homes that are within the Patriot Center are as follows: King (all male); Franklin (co-ed); Paul Revere (co-ed); Barton (female); and Rosser (female).

In addition to his position as a late-night child care counselor, Plaintiff began working as a member of the therapeutic support staff in or around April of 2006. Plaintiff maintained all of his duties as a late-night child care counselor in addition to this new role.

At the time of hire, each KidsPeace employee is provided with an employee handbook. According to the handbook's Harassment Policy, all employees are prohibited from engaging in any acts of harassment and/or discrimination based on sex. The handbook further provides that any violations of the Harassment Policy may result in disciplinary action, up to and including termination of employment.

KidsPeace's Harassment Policy also provides that allegations of harassment will be investigated promptly. Such investigations may include individual interviews with the parties involved and with individuals who may have observed the alleged conduct or have relevant knowledge of the incident in question.

At the time of his hire, Plaintiff's late-night child care supervisor was Jane Marino ("Ms. Marino"). Ms. Marino introduced Plaintiff to the other late-night child care staff, including, but not limited to, Pam Peters ("Ms. Peters") and Donna Doran ("Ms. Doran"). While Doran was an assistant supervisor at that time, Ms. Peters was, and remains, a late-night child care counselor. As a late-night child care counselor, Ms. Peters had no supervisory authority over Plaintiff.

Plaintiff alleges that Ms. Peters and Ms. Doran made derogatory statements to him during his employment with KidsPeace. Plaintiff contends that when he was initially introduced to Ms. Peters she asked whether it was true that "you people from Africa wear leaves." Plaintiff further alleges that at some point during his employment Ms. Doran made a comment regarding food people eat in Africa. Tellingly, Plaintiff is the only individual who recalls these statements and Ms. Peters and Ms. Doran adamantly deny making such comments to Plaintiff. Further, there is no evidence of record which indicates Plaintiff ever complained to anyone at KidsPeace with regard to such alleged comments.

During Plaintiff's employment with KidsPeace he was involved in several inappropriate incidents involving female co-workers. In this regard, Plaintiff was verbally counseled and provided with written discipline with respect to his interactions with these female co-workers.[1]

On January 3, 2007, a co-worker of Plaintiff, Kara Williams ("Ms. Williams"), complained that Plaintiff had made sexually inappropriate comments to her regarding her breasts. According to Ms. Williams, Plaintiff pointed at her breasts and asked "what would you do if I touched those?" Ms. Williams complained to her supervisor about

---

[1] Plaintiff was also disciplined for attendance related issues.

Plaintiff's comments.  KidsPeace investigated the complaint by Ms. Williams.  During the investigation, Plaintiff admitted making sexually suggestive statements to Ms. Williams.  Subsequent to the investigation, KidsPeace separated Plaintiff and Ms. Williams, and Plaintiff had no further contact with her.  As a result of its investigation, KidsPeace verbally counseled Plaintiff.  In this regard, Plaintiff was informed that his behavior was inappropriate and unacceptable.  Plaintiff was further counseled regarding the concepts of professional boundaries and sexual harassment.

On March 1, 2007, Ms. Peters complained about Plaintiff's inappropriate or unprofessional behavior.  According to Ms. Peters, Plaintiff purposely opened a desk drawer in the office at the Revere House into her stomach.  As per KidsPeace's Harassment Policy, Ms. Peters' complaint was investigated by Ms. Doran and Lea Nissley ("Ms. Nissley"), assistant late-night supervisor.  Scott Pompa ("Mr. Pompa"), late night manager, supervised the investigation.  As part of the investigation, Ms. Doran and Ms. Nissley met with Plaintiff and Ms. Peters.  Amy Remmel ("Ms. Remmel"), human resources administrator for KidsPeace, also met with Ms. Peters.

During the meeting with Ms. Remmel, Ms. Peters stated that she feared for her safety and the safety of her co-workers, particularly the female co-workers, when she worked with Plaintiff.  Ms. Peters complained that Plaintiff had issues with female co-workers and attempted to intimidate and bully her while at the worksite.

Ultimately, because Ms. Peters' allegations could not be corroborated, Plaintiff was not disciplined or counseled by KidsPeace for this incident.  In the best interest of both parties, however, Plaintiff and Ms. Peters were no longer scheduled to work in the same house.

On March 22, 2007, Plaintiff was working at the Revere House with a co-worker, Jeanine Martincavage ("Ms. Martincavage").  At approximately 2:55 a.m., Ms. Nissley received a call from Ms. Martincavage who stated that Plaintiff was acting in an inappropriate and threatening manner.  Ms. Nissley went to the Revere House to investigate the situation.  When Ms. Nissley arrived at the House, Ms. Martincavage was visibly upset.  Ms. Martincavage informed Ms. Nissley that Plaintiff was treating her disrespectfully during her shift.  Further, Ms. Martincavage stated that while she was in the kitchen of the Revere House, Plaintiff began cursing and kicking at a cat located outside of the door.

Ms. Martincavage, along with several other employees, fed stray cats located around KidsPeace's various houses, including the Revere House.  At the time of this incident there was no KidsPeace policy which prohibited the feeding of stray cats around the homes.  Regardless of this fact, Plaintiff made it known to Ms. Martincavage and other KidsPeace employees that he did not like cats, including the strays, and became agitated when the employees fed and cared for the stray cats.

According to Ms. Martincavage, on March 22, 2007, while she was in the kitchen of the house preparing a bowl of milk for one of the stray cats, Plaintiff went on a tirade and informed her that he hates cats and that he was going to kick and/or stomp the "mother f--ing cat."  During this outburst, Plaintiff repeatedly used profanity directed at Ms. Martincavage.  Plaintiff then attempted to leave the house to physically harm the cat. When Ms. Martincavage attempted to prevent Plaintiff from exiting, he shoved her out of his path and into a wall, and exited the house.

Ms. Martincavage immediately contacted Ms. Nissley to inform her of the incident. The night of the incident, Plaintiff admitted that he had pushed Ms. Martincavage out of the way so that he could exit the house to kick the cat. Plaintiff further admitted to cursing at Ms. Martincavage during the tirade. As per KidsPeace's Harassment Policy, an investigation into Ms. Martincavage's complaint was conducted by Ms. Nissley and Ms. Doran.

During the KidsPeace investigation, Plaintiff changed his original story and contended that Ms. Martincavage placed her hands on him before he shoved her. Based upon his prior, contemporaneous statement, however, his contention in this regard was deemed by the investigators to lack credibility. Additionally, on March 26, 2007, Ms. Martincavage was interviewed by Ms. Remmel. Ms. Martincavage's description of the incident to Ms. Remmel was consistent with her prior statements to Ms. Nissley on the night of the incident.

Based upon Plaintiff's **admissions** and the results of their investigation, Ms. Nissley and Ms. Doran concluded that Plaintiff's actions toward Ms. Martincavage on March 22, 2007 violated KidsPeace's Employee Conduct and Harassment Policies. In this regard, the investigation concluded that Plaintiff physically assaulted a fellow employee while repeatedly using profanity. Because Plaintiff's actions were deemed to be discourteous and abusive toward a coworker KidsPeace had grounds for immediate termination. Nevertheless, based upon the recommendation of Ms. Remmel, Plaintiff's employment was not terminated. Rather, Plaintiff was provided with a final written warning.

On April 4, 2007, subsequent to receiving the final written warning, Plaintiff provided Ms. Doran with a written response.  According to Plaintiff's response, he believed he was disciplined because he does not like the stray cats.  Specifically, Plaintiff stated that "[s]ince this [sic] incident that occurred on March 22, 07 [sic] was all about the cats, **I believed [sic] that was the reason I was treated unfaired** [sic]."  Plaintiff's April 4, 2007 correspondence, makes no reference to discrimination, harassment, or any other form of racial or national origin bias.

On November 25, 2007, Plaintiff was again involved in an incident of inappropriate conduct with a female KidsPeace employee.  On that date, Plaintiff was working at a KidsPeace co-ed house with Amanda Warner.  According to Ms. Warner, during her shift Plaintiff made inappropriate comments and sexual advances towards her. Specifically, Ms. Warner stated that Plaintiff forced himself on top of her, attempted to kiss her by physically holding her face, bent her over the couch, and rubbed himself against her.  Ms. Warner then raised her voice in an attempt to stop Plaintiff's advances. In response, Plaintiff tried to cover her mouth to prevent her from complaining, informing her that "[she] didn't want him to stop."

On November 28, 2007, Ms. Warner informed Ms. Doran of the incident.  Ms. Warner waited until November 28, 2007 to report the incident because she felt more comfortable reporting it to Ms. Doran rather than to Ms. Nissley.  Subsequent to learning of the November 25, 2007 incident, an investigation was conducted by Ms. Doran and Ms. Nissley.  As part of the investigation, Plaintiff was questioned and given an opportunity to provide his side of the story.  Based upon the results of the investigation in to Ms. Warner's complaint, along with Plaintiff's history of inappropriate conduct

towards female employees, he was placed on immediate administrative leave with the recommendation that he be terminated.

On or about December 2, 2007, Plaintiff met with Ms. Remmel in the Human Resources office.  During that meeting, Plaintiff stated to Ms. Remmel that he did not trust women at KidsPeace.  Plaintiff did not, however, provide Ms. Remmel with any additional facts, information or explanation as to his conduct toward Ms. Warner on November 25, 2007.

Based upon Plaintiff's repeated inappropriate interactions with female employees, his employment with KidsPeace was terminated.  Plaintiff was informed of his termination on December 4, 2007, via telephone.

## III.   DAMAGES

Defendant is not claiming any damages.

## IV.   DEFENDANT'S WITNESSES

1.   Amy Remmel (liability)

Proposed Testimony:  Ms. Remmel will testify regarding KidsPeace's policies and procedures and the investigation into the allegations of harassment against Plaintiff.

2.   Donna Doran (liability)

Proposed Testimony:  Ms. Doran will testify regarding Plaintiff's position at KidsPeace and the allegations of harassment against Plaintiff and the corresponding investigations.

3.     Lea Nissley (liability)

Proposed Testimony:  Ms. Nissley will testify regarding Plaintiff's position at KidsPeace and the allegations of harassment against Plaintiff and the corresponding investigations.

4.     Scott Pompa (liability)

Proposed Testimony:  Mr. Pompa will testify regarding KidsPeace's policies and procedures and the allegations of harassment against Plaintiff and the corresponding investigations.

5.     Lisa Garbacik (liability and damages)

Proposed Testimony:  Ms. Garbacik will authenticate Plaintiff's personnel file, KidsPeace's Employee Handbook and will testify regarding Plaintiff's sick and vacation pay.

6.     Jeanine Martincavage (liability)

Proposed Testimony:  Ms. Martincavage will testify regarding Plaintiff's alleged acts of harassment.

7.     Kara Williams (liability)

Proposed Testimony:  Ms. Williams will testify regarding Plaintiff's alleged acts of harassment.

8.     Ms. Pam Peters (liability)

Proposed Testimony:  Ms. Peters will testify regarding Plaintiff's alleged acts of harassment.

9.     Ms. Amanda Warner (liability)

Proposed Testimony:  Ms. Warner will testify regarding Plaintiff's alleged acts of harassment.

10.     Michael Cofer (liability and damages)

Proposed Testimony:  Mr. Cofer will testify regarding Plaintiff's claims of discriminatory conduct.

11.     Tanesha West- The Progressions Companies, Inc. (damages)

Proposed Testimony:  Ms. West will testify regarding Plaintiff's employment with The Progressions Companies, Inc.

12.     Jamie Long- The Progressions Companies, Inc. (damages)

Proposed Testimony:  Ms. Long will testify regarding Plaintiff's employment with The Progressions Companies, Inc.

13.     Judy Spangenber The Progressions Companies, Inc. (damages)

Proposed Testimony:  Ms. Spangenber will testify regarding Plaintiff's employment with The Progressions Companies, Inc.

14.     Records Custodian from Unemployment Compensation Board

Proposed Testimony:  Authenticate records from Unemployment Compensation.

15.     Records Custodian from Lehigh Carbon Community College ("LCCC")

Proposed Testimony:  Authenticate records from LCCC.

Defendant reserves the right to call any witnesses identified in Plaintiff's Pretrial Memorandum in support of its defenses.

## IV.    DEFENDANT'S EXHIBIT LIST

| Exhibit | Bates No. | Description |
|---------|-----------|-------------|
| D-1  | 0001-0009 | Amended Complaint and Jury Demand |
| D-2  | 0010-0019 | Defendant's Answer and Affirmative Defenses to Plaintiff's Amended Complaint |
| D-3  | 0020-0030 | Defendant's First Set of Interrogatories Addressed to Plaintiff, Kunle Ade |
| D-4  | 0031-0037 | Defendant's First Request for Production of Documents to Plaintiff |
| D-5  | 0038-0045 | Plaintiff's Answers and Objection to Defendant's Interrogatories |
| D-6  | 0046-0085 | Plaintiff's Answers to Request for Production of Documents |
| D-7  | 0086-0154 | Deposition Transcript of Kunle Ade |
| D-8  | 0155-0161 | Deposition Transcript of Benjamin Joseph Arnold |
| D-9  | 0162-0170 | Deposition Transcript of Kimberly Fleming-Arnold |
| D-10 | 0171-0187 | Deposition Transcript of Kathleen Somers |
| D-11 | 0188-0193 | Deposition Transcript of Michael Aaron Cofer |
| D-12 | 0194-0207 | Deposition Transcript of Jacqueline T. Burns |
| D-12 | 0208-0216 | Deposition Transcript of Kara Williams |
| D-13 | 0217-0225 | Defendant's Statement of Undisputed Material Facts |
| D-14 | 0226-0290 | Plaintiff's Statement of Disputed Material Facts |
| D-15 | 0291-0297 | Certification of Kunle Ade |
| D-16 | 0298-0313 | KidsPeace Employee Handbook |
| D-17 | 0314-0317 | KidsPeace Harassment Policy Dated December 28, 2006 |
| D-18 | 0318-0446 | Kunle Ade Personnel File |

| | | |
|---|---|---|
| D-19 | 0447-0554 | Jeff Onushco Personnel File |
| D-20 | 0555-0624 | Amanda Warner Personnel File |
| D-21 | 0625-0764 | Pam Peters Personnel File |
| D-22 | 0765-0843 | Kimberly Fleming Personnel File |
| D-23 | 0844-0915 | Sherwood Dejoie Personnel File |
| D-24 | 0916-1043 | Jeanine Martincavage Personnel File |
| D-25 | 1044-1115 | Michael Cofer Personnel File |
| D-26 | 1116-1230 | Kathleen Opolsky, aka Kathleen Sommers,  Personnel File |
| D-27 | 1231-1316 | Kimberly Fleming Arnold Leave of Absence File |
| D-28 | 1317-1439 | Jacqueline T. Metchoe-Burn Personnel File |
| D-29 | 1440-1821 | PHRC Documents |
| D-30 | 1822-1827 | EEOC Documents |
| D-31 | 1828-1978 | Unemployment Compensation Documents |
| D-32 | 1979-2061 | The Progressions Co., Inc. Documents |
| D-33 | 2062-2083 | Lehigh Carbon Community College Documents |
| D-34 | 2084-2085 | Kunle Ade Attendance Records |
| D-35 | 2086 | Kara Williams Email Dated March 29, 2007 |
| D-36 | 2087-2093 | Pam Peters Investigation Notes |
| D-37 | 2094-2096 | Amy Remmel Notes Related to Pam Peters |
| D-38 | 2097-2099 | Jeanine Martincavage Documentation |
| D-39 | 2100 | Kunle Ade Disciplinary Action Final Written Warning |
| D-40 | 2101-2102 | Jeanine Martincavage Written Statement |

| | | |
|---|---|---|
| D-41 | 2103-2104 | Amy Remmel Notes Regarding Jeanine Martincavage |
| D-42 | 2105 | Amanda Warner Investigation Notes |
| D-43 | 2106-2107 | Informal Complaint of Sexual Harassment Dated November 28, 2007 |
| D-44 | 2108 | Amanda Warner Written Statement |
| D-45 | 2109 | Kunle Ade Employee Disciplinary Report |
| D-46 | 2110 | Kunle Ade Employee Termination/Status Change |
| D-47 | 2111 | Kunle Ade Letter Dated December 3, 2007 |
| D-48 | 2112-2113 | Emails Regarding Issues with Clients |
| D-49 | 2114-2115 | Kunle Ade Disciplinary Action for Attendance |
| D-50 | 2116 | Kunle Ade Letter Dated April 4, 2007 |
| D-51 | 2117-2119 | KidsPeace Harassment Policy Dated April 25, 2001 |
| D-52 | 2120-2127 | PHRC Discharge Questionnaire |
| D-53 | 2128 | Kunle Ade Acknowledgement of Receipt of Employee Handbook |
| D-54 | 2129 | Kunle Ade Acknowledgement of KidsPeace Policies and Procedure Manual |
| D-55 | 2130-2138 | KidsPeace Payroll Records |
| D-56 | 2139-2143 | Kimberly Fleming Facebook Excerpts |
| D-57 | 2144-2150 | Photographs |

Defendant reserves the right to utilize any exhibit identified in Plaintiff's Pretrial Memorandum in support of its defenses.

V.   **LEGAL ISSUES**

A.   **KidsPeace's Objections to Plaintiff's Exhibits**

KidsPeace objects to the following exhibits submitted by Plaintiff for the foregoing reasons:

1.   Exhibit 25 – "Employee Handbook":  Plaintiff has submitted Exhibit 25 under the description of Employee Handbook.  Contrary to this description, however, the "Employee Handbook" submitted by Plaintiff was not authenticated by any individual during discovery.  In fact, during Plaintiff's deposition, he testified unequivocally that the Employee Handbook identified in his Pretrial Memorandum is not the Handbook he was provided with during his employment with KidsPeace.  The Handbook submitted by KidsPeace as Exhibit D-16 is the only handbook which has been authenticated during the course of discovery.  As such, Exhibit 25 should be deemed inadmissible by the Court.

2.   Exhibits 40-41 – "Criminal Record Check" and "Employment Application":  It is believed that Plaintiff intends to utilize Exhibits 40-41 against Jeanine Martincavage to impeach her character or credibility.  KidsPeace hereby objects to Exhibits 40-41 pursuant to Federal Rule of Evidence 609.

Under Rule 609, "for the purpose of attacking the character for  truthfulness of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death **or imprisonment in excess of one year** under the law under which the witness was convicted…and,

(2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness."

Fed. R. Evid. 609(a)(1)-(2)(emphasis added).

Further, "evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction…." Fed. R. Evid. 609(b).  Here, the Exhibits identified by Plaintiff indicate that Ms. Martincavage pled guilty to retail theft, a summary offense, on October 10, 1999.  Pursuant to the Pennsylvania Crimes Code, a summary offense of this type has a maximum term of imprisonment of ninety (90) days.  18 Pa. C.S.A. § 106(c).  As such, Ms. Martincavage's summary offense does meet the requirements of Rule 609(a)(1).  Additionally, it is well established that "theft crimes are generally inadmissible for purposes of impeachment pursuant to Federal Rule of Evidence 609(a)(2)."  See Warren v. Township of Derry, 2007 WL 2120043, *2 (M.D. Pa. 2007)(citing United States v. Johnson, 388 F.3d 96, 99-100)(3d Cir. 2004)).  Accordingly, because Plaintiff's Exhibits 40-41 do not meet the requirements of Rule 609(a)(1) or (2), they should be deemed inadmissible by the Court.

Additionally, even if this Court finds that Ms. Martincavage's retail theft conviction is the type covered under Rule 609(a)(2), it is still inadmissible under Rule 609(b) because more than ten (10) years has elapsed since the time of her guilty plea.  As such, KidsPeace objects to Exhibits 40-41 to the extent Plaintiff intends to rely upon Ms. Martincavage's prior conviction to impeach her character or credibility.

3.     Exhibit 59 – "Personal Leave and Phone Log":  Plaintiff has identified the personal leave and phone log of Kimberly Fleming-Arnold as Exhibit 59.  KidsPeace objects to the inclusion of this exhibit to the extent it contains information deemed hearsay by the Court.  The "Personal Leave and Phone Log" exhibit contains several documents from The Hartford Company, Ms. Fleming-Arnold's various physicians, and individuals not identified as witnesses by Plaintiff.  Plaintiff has not identified any individuals from The Hartford Company or any of Ms. Fleming-Arnold's physicians to testify at the trial.  As such, Plaintiff has not identified any witnesses who will authenticate the documents he intends to utilize at the time of trial.  Based upon the foregoing, these documents constitute hearsay and should be excluded by the Court.

4.     Exhibit 66 – Various Photographs:  Plaintiff has attempted to introduce various photographs of a female believed to be Amanda Warner.  Plaintiff did not produce such photographs to KidsPeace prior to February 22, 2010 and, as such, they should be excluded.

Pursuant to Federal Rule of Civil Procedure 37(c)(1), if "a party fails to provide information…as required by Rule 26(a) or (e), the party is not allowed to use that information…at a trial, unless the failure was substantially justified or is harmless." In KidsPeace's Request for Production, it requested "[a]ll books, diaries, logs, reports, documents, or other tangible things related to the allegations made by Plaintiff in the Complaint that are in Plaintiff's possession, custody and/or control."  KidsPeace further requested "[a]ll documents you or your attorney expect to offer as an exhibit into evidence at the time of trial, not otherwise produced in response to this Request for Production of Documents."  Despite the foregoing Requests, and the continuing nature of

such requests, Plaintiff did not produce the documents identified as Exhibit 66 during the course of discovery.  KidsPeace has been unduly prejudiced in that it was precluded from questioning Plaintiff during his deposition with regard to the nature of the photographs, when and where they were obtained, and how such information was procured.  Given Plaintiff's failure to produce such evidence during the course of discovery, he should be precluded to utilize such evidence at the time of trial pursuant to Rule 37(c)(1).

Additionally, as will be set forth more fully in a Motion in Limine, KidsPeace objects to Plaintiff's utilization of Exhibit 66 pursuant to Federal Rule of Evidence 412, which states, in pertinent part, that (1) evidence offered to prove that any alleged victim engaged in other sexual behavior, or (2) evidence offered to prove any alleged victim's sexual predisposition is not admissible in any civil or criminal proceeding involving alleged sexual misconduct.  It is believed that Plaintiff intends to utilize Exhibit 66 in order to establish Ms. Warner's alleged sexual predisposition.  Accordingly, KidsPeace objects to the use of Exhibit 66 at the time of trial.

5.     Exhibit 84 – September 16, 2007 email chain:  Plaintiff has identified an email chain from September 16, 2007 as Exhibit 84.  KidsPeace objects to the use of this exhibit to the extent it includes the names of minors.  KidsPeace has provided a redacted version of this document as Exhibit D-48, bates numbered 2112-2113.  KidsPeace respectfully requests that Plaintiff's Exhibit 84 be excluded to the extent it contains information pertaining to minors and that the Court rely solely upon Exhibit D-48, bates numbered 2112-2113.

**B.**     **KidsPeace's Objections to Plaintiff's Designation of Transcripts to be Read to the Jury at Trial**

In Plaintiff's Pretrial Memorandum, he has identified several sections of deposition transcripts which he has designated to be read into the record at trial. KidsPeace objects to the reading of such testimony into the record at the time of trial as it is not permissible pursuant to Federal Rule of Civil Procedure 32.

Pursuant to Rule 32, at a trial, all or part of a deposition may be used against a party on the following conditions:

   (A)     the party was present or represented at the taking of the deposition or had reasonable notice of it;

   (B)     it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

   (C)     the use is allowed by Rule 32(a)(2) through (8).

Fed. R. Civ. P. 32.

Rule 32(a)(2) through (8) sets forth specific circumstances where a party may present deposition testimony at the time of trial.  These specific circumstances include the following:  for the purpose of contradicting or impeaching the testimony of deponent as a witness, or for any other purpose permitted by the Federal Rules of Evidence; the deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a)(4); and for any purpose if the court finds: (a) that the witness is dead; (b) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition; (c) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment; (d) that the party offering the deposition could not procure the witness's

attendance by subpoena; or (e) on motion and notice, that exceptional circumstances make it desirable-in the interest of justice and with due regard to the importance of live testimony in open court-to permit the deposition to be used. Fed. R. Civ. P. 32(a)(2)-(4).

The deposition transcripts of Amanda Warner, Janet [sic] Marino, Jacqueline Burns, Kathleen Sommers, Kimberly Arnold, Benjamin Joseph Arnold, Jeff Onushko [sic], and Lea Nissley do not meet any of these requirements.[2] KidsPeace does not contend that Plaintiff cannot utilize the aforementioned transcripts to impeach or to contradict the testimony of the witnesses at the time of trial, however, the transcripts should not be admitted as evidence or for any other purpose.

The aforementioned individuals are not parties to the pending proceeding, the depositions were not taken pursuant to Rule 30(b)(6) or 31(a)(4), nor are any of the individuals an officer, director, or managing agent of KidsPeace.  Further, KidsPeace plans to make its representatives, including Ms. Remmel who is no longer employed by KidsPeace, available at the time of trial.  Additionally, Ms. Burns, Ms. Sommers, Ms. Arnold, and Mr. Arnold are listed as witnesses in Plaintiff's Pretrial Memorandum and are within the Court's subpoena power.  As such, it is presumed that Plaintiff will make these individuals available at the time of trial.

Given that none of the prerequisites of Rule 32 exist in this case, Plaintiff should be precluded from reading the designated testimony into the record at the time of trial except with regard to Ms. Remmel.

---

[2] KidsPeace acknowledges that Amy Remmel resides in the Commonwealth of Virginia and is located more than 100 miles from the Courthouse.  As such, Plaintiff may utilize Ms. Remmel's deposition testimony.  It is the intention of KidsPeace, however, to produce Ms. Remmel for trial.

**C.**     **Plaintiff's "Catch-All" Exhibit Designation Should Be Stricken From the Pretrial Memorandum**

In Plaintiff's Pretrial Memorandum, he reserves the right to introduce into evidence "any other documents obtained during the course of discovery in this case." The Court's Scheduling Order specifically states that any and all exhibits intended to be used at the time of trial be exchanged and marked prior to trial. Plaintiff's "catch-all" language fails to comply with the Court's Order and prohibits KidsPeace from objecting to said exhibits prior to the time of trial. As such, KidsPeace respectfully requests that this "catch-all" language be stricken from Plaintiff's Pretrial Memorandum.

**VI.**     **EXPECTED LENGTH OF TRIAL**

5 days

Respectfully submitted,

TALLMAN, HUDDERS & SORRENTINO

By:     /s/ Steven E. Hoffman, Esquire
        Steven E. Hoffman, Esquire
        Attorney I.D. No. 63911
        Edward J. Easterly, Esquire
        Attorney I.D. No. 204546
        1611 Pond Road, Suite 300
        Allentown, PA  18104-2256
        (610)-391-1800
        Attorneys for the Defendant

## CERTIFICATE OF SERVICE

I, Steven E. Hoffman, Esquire, do hereby certify that Defendant's Pre-trial Memorandum has been filed electronically on March 3, 2010 with the Court and is available for view and download from the ECF System.

_/s/ Steven E. Hoffman_
Steven E. Hoffman